**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Case No. 18-00434-SMT |
| A V Car & Home, LLC | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor in Possession. | ) | |
| | ) | |

**DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION**

## <u>INTRODUCTION</u>

Pursuant to Section 1121 of Title 11 of the United States Code, A V Car & Home, LLC,

Debtor and Debtor-in-possession [the "Debtor"], in the above-captioned bankruptcy case, by and

through its attorneys Janet M. Nesse, Justin P. Fasano, and McNamee, Hosea, Jernigan, Kim,

Greenan & Lynch, P.A., hereby respectfully submits the following Debtor's Second Amended

Plan of Liquidation (the "Plan") pursuant to the provisions of Chapter 11 of Title 11, United

States Code.  The Debtor is the proponent of the Plan within the meaning of Bankruptcy Code

section 1129.  Reference is made to the Disclosure Statement, distributed contemporaneously

herewith, for a discussion of (i) the Debtor's history, businesses and operations, (ii) a summary

and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the

consummation of this Plan.  No solicitation materials, other than the Disclosure Statement and

related materials transmitted therewith, have been approved for use in soliciting acceptances and

rejections of the Plan.  Nothing in the Plan should be construed as constituting a solicitation of

acceptances of the Plan unless and until the Disclosure Statement has been approved and

distributed to all Holders of Claims and Interests to the extent required by Bankruptcy Code

section 1125.  Subject to certain restrictions and requirements set forth in Bankruptcy Code

section 1127 and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify,

revoke, or withdraw this Plan prior to its substantial consummation.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE
ENCOURAGED TO READ CAREFULLY THE PLAN AND THE DISCLOSURE
STATEMENT (INCLUDING ALL EXHIBITS THERETO), EACH IN ITS ENTIRETY,
BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## I.      DEFINITIONS

The following terms (which appear in this Plan as capitalized terms), when used in this
Plan, have the meanings set forth below:

2

"**363(h) Case**" means the lawsuit commenced by the Brown Trustee in the Bankruptcy Court as Adv. Proc. 18-10026-SMT, and any counterclaims and cross-claims asserted therein.

"**Administrative Expense Claim**" means a claim for administrative costs or expenses that are allowable under Bankruptcy Code section 503(b) or 28 U.S.C. § 1930.  These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Debtor's Estate after the Petition Date but prior to the Effective Date; (b) Professional Fee Claims; (c) Administrative Tax Claims; and (d) fees or charges assessed against the Estate under 28 U.S.C. § 1930.

"**Administrative Expense Claims Bar Date**" means thirty (30) days after the Effective Date, with respect to Administrative Expense Claims (except for Professional Fee Claims) for services rendered or expenses incurred from the Petition Date through the Effective Date relating to or arising out of any period after the Petition Date.

"**Administrative Expense Claims Objection Date**" means the last day for filing an objection to any request for the payment of an Administrative Expense Claim other than a Professional Fee Claim, which shall be the later of (a) sixty (60) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court.  The filing of a motion to extend the Administrative Expense Claims Objection Date shall automatically extend the Administrative Expense Claims Objection Date until a Final Order is entered on such motion. In the event that such motion to extend the Administrative Expense Claims Objection Date is denied by the Bankruptcy Court, the Administrative Expense Claims Objection Date shall be the later of the current Administrative Expense Claims Objection Date (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Expense Claims Objection Date.

"**Administrative Tax Claim**" means a Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the date of the Petition Date and ending on the Effective Date.

"**Adverse Possession Case**" means the lawsuit commenced by Welch Four in the Superior Court of the District of Columbia Civil Division as case no. 2016 CA 004991 R(RP), which was removed to this Court as Adv. Proc. 18-10013-SMT.

"**Allowed Administrative Expense Claim**" means an Administrative Expense Claim that is allowed as set forth in Article III.A.a.

"**Allowed Claim**" means a Claim, other than an Administrative Expense Claim, (i) allowed by Final Order of the Bankruptcy Court, (ii) proof of which was timely filed on or before the Claims Bar Date or (iii) if no proof of Claim has been timely filed, which has been or hereafter is listed in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent, and in each such case in clauses (ii) and (iii) above, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by

the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any Claim or portion of a Claim that was or is satisfied or released during the Case is not an Allowed Claim.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtor may hold against the Holder thereof, to the extent that such Claim may be set off pursuant to applicable law.

**"Allowed Class '\*\*' Claim"** means an Allowed Claim in the particular class described.

**"Assets"** means all assets of the Debtor's Estate including, but not limited to, "property of the estate" as described in section 541 of the Bankruptcy Code.

**"Auction"** has the meaning set forth in Article V(C).

**"Avoidance Action"** means any Causes of Action arising under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws vesting in creditors any and all rights to avoid, rescind, or recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

**"Ballot"** means the Ballot for accepting or rejecting the Plan.

**"Ballot Date"** means the date set by the Bankruptcy Court by which all Ballots with respect to the Plan must be received.

**"Bankruptcy Code"** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Columbia.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bankruptcy Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as the same may have been amended from time to time.

"**Brown Trustee**" means Bryan Ross, not individually, but in his capacity as Chapter 7 Trustee for David J. Brown in case no. 16-00466-SMT (Bankr. D.D.C.)

**"Business Day"** means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

**"Case"** means the above-captioned case commenced by the Debtor in the Bankruptcy Court.

4

"**Cash**" means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

"**Causes of Action**" means any and all claims, demands, rights, actions, causes of action and suits of the Debtor and the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims pursuant to section 510 of the Bankruptcy Code, and (8) Section 506(c) Claims; (9) the Counterclaims; and (10) any other claims which may be asserted against third parties.

"**Claim**" means a claim as that term is defined in Bankruptcy Code section 101(5).

"**Claims Bar Date**" means, with respect to Claims filed by Creditors other than Government Agencies, November 2, 2018, which was the last date for Creditors other than Government Agencies to file Claims against the Estate pursuant to the Notice of Chapter 11 Bankruptcy Case, and with respect to Claims filed by Government Agencies, December 7, 2018, which was the last date for Government Agencies to file Claims against the Estate pursuant to the Notice of Chapter 11 Bankruptcy Case; and with respect to Claims filed by the Debtor on behalf of Creditors, December 3, 2018, which was the last date for the Debtor to file Claims on behalf of Creditors against the Estate pursuant to Federal Rule of Bankruptcy Procedure 3004.

"**Claims Objection Deadline**" means the last day for filing objections to General Unsecured Claims, which day shall be the later of (a) thirty (30) days after the Effective Date or (b) such other date as the Bankruptcy Court may order.  The Debtor may seek a one time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional thirty (30) days after the current Claims Objection Deadline.  Thereafter, any further extension of the Claims Objection Deadline shall require bankruptcy court approval, and may be granted only upon a showing of exigent circumstances.  In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline.  For the avoidance of doubt, after the Effective Date, no Person other than the Debtor shall be authorized to file objections to Claims other than Professional Fee Claims.

"**Class**" means a group of Claims as classified in Article III.

"**Confirmation**" means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan Confirmation.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1129.

**"Co-Owner Claims"** are the claims of the Brown Trustee.

**"Counterclaims"** means the counterclaims filed by Mr. Brown and/or the Debtor in the Adverse Possession Case.

**"Debtor"** means A V Car & Home, LLC

**"Deposit"** has the meaning set forth in Article V(C).

**"Disclosure Statement"** means the Disclosure Statement with Respect to Debtor's Plan of Liquidation.

"**Disclosure Statement Order**" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

**"Disputed Claim"** means a Claim:

   (a) As to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest is filed or is deemed filed under Bankruptcy Rule 3003(b)(2); and

   (b) As to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Distribution"** means any transfer under the Plan of Cash or other property or instruments to either a Holder of an Allowed Administrative Expense Claim or a Holder of an Allowed Claim.

**"Effective Date"** has the meaning set forth in Article VIII.

**"Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

"**Estate**" means the bankruptcy estate of the Debtor.

"**Estate Parties**" means the Persons referenced in Article VII.B hereof.

"**Executory Contracts**" means those agreements or obligations which are not fully performed by the Debtor and are subject to assumption or rejections pursuant to §365 of the Bankruptcy Code.

"**Final Fee Application**" means the final requests or applications for payment of Professional Fee Claims.

"**Final Order**" means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a) That has not been reversed, rescinded, stayed, modified, or amended;
(b) That is in full force and effect; and
(c) With respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

"**General Unsecured Claim**" means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or a Secured Claim.

"**Governmental Agency(y)(ies)**" means any department or agency of the United States of America or any state, including quasi-governmental agencies, acting through, or funded by any such department or agency, through state or federal government charter, or otherwise.

"**Holder**" means the holder of a Claim or interest.

"**Insider**" means an insider as that term is defined in Bankruptcy Code section 101(31).

"**Lease**" means any agreement between the Debtor and any Tenant for the lease of real property, which is in effect as of the Effective Date.

"**Local Rules**" means the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Columbia, as now in effect or hereafter amended and applicable to the Case.

"**Mr. Brown**" means David J. Brown.

"**Non-Tax Priority Claim**" means a Claim, other than and without duplication of an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a)(3), (4), (5), or (7).

"**Offer**" has the meaning set forth in Article V(C).

"**Offer Deadline**" has the meaning set forth in Article V(C).

**"Person"** means any natural person or Entity.

**"Petition Date"** means June 20, 2018.

**"Plan"** means this Debtor's Plan of Liquidation, as it may be amended or supplemented.

**"Plan Document"** means this Plan, and any Exhibits thereto.

"**Plan Participants**" means the persons entitled to exculpation as provided in Article VII of the Plan.

**"Post-Effective Date Expenses"** means any expenses incurred by the Debtor after the Effective Date including, but not limited to, professional fees and expenses incurred by the Debtor, fees payable to the United States Trustee, and premiums related to any bond or insurance policy, and reasonable expenses incurred by the Debtor in the ordinary course of business.

**"Post-Petition"** means the time after the Petition Date.

**"Priority Tax Claim"** means a Claim entitled to priority against the Debtor under Bankruptcy Code section 507(a)(8), or which is secured by the Assets of the Debtor.

**"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which that Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

**"Professional Fee Claim"** means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered by any of the Professionals, or related expenses, incurred after the Petition Date but prior to the Effective Date on behalf of the Estate; or

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, and the like) employed by the Estate with the approval of the Bankruptcy Court at the expense of the Estate pursuant to sections 327 and/or 328 of the Bankruptcy Code.

**"Property"** means the Debtor's real property located at 309 H Street, Washington DC 20001, which is known for purposes of assessment and taxation as Lot 0027 in Square 0528, and all improvements thereon and rights associated therewith. For the sake of the definition under this Plan, Property includes the portion of the Property that is subject to Welch Four's claims in the Adverse Possession Case but not the real property that is subject to the Mr. Brown's counterclaims in the Adverse Possession Case.

**"Qualified Offer"** has the meaning set forth in Article V(C).

8

**"Rejection Damage Claim"** means a Claim for damages arising under an unexpired lease of real or personal property or an executory contract that the Debtor rejects under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

**"Sales Proceeds"** means all proceeds of the sale of the Property after payment of Allowed Claims on the Effective Date pursuant to the terms of the Plan, including the Co-Owner Claims.

**"Section 506(c) Claim"** means any surcharge claim asserted by the Debtor after the Effective Date pursuant to Section 506(c) of the Bankruptcy Code.

**"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code section 553.  A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

"**Tenant**" means a party to a Lease with the Debtor under which the Debtor is a landlord.

"**Unclaimed Property**" means any Cash or other property which is unclaimed for sixty (60) days after its distribution.

**"U.S. Trustee"** means the Office of the United States Trustee.

"**Welch Four**" means Welch Family Limited Partnership Four.

"**Welch Nine**" means Welch Family Limited Partnership Nine.

## II.    RULES OF INTERPRETATION

The rules of construction in Bankruptcy Code section 102 apply to this Plan.

1.    A capitalized term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

2.    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

3.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

4.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

5.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

6.      Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

7.      Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

8.      Article captions and headings are used only as convenient references and do not affect this Plan's meaning.

10.      Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the District of Columbia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

11.      All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

## III.      CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides Creditors into Classes based on their legal rights and interests and provides for the satisfaction of Claims from the sale of the Property.  This Article classifies Claims, except for Administrative Expense Claims and Priority Tax Claims, which are not classified, for all purposes, including voting, confirmation, and Distribution under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class.  The following table summarizes the Classes of Claims and Interests under this Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Class 1 | Non-Tax Priority Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| Class 2 | Secured Claims of Taxing Authorities and Utility Lienholders | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| Class 3 | Secured Claim of Welch Family Limited Partnership Nine | Provisionally treated as impaired, subject to Debtor's right to argue it is unimpaired. | Not Entitled to Vote, Deemed to Accept |

10

| | | | |
|---|---|---|---|
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Adverse Possession Claim of Welch Family Limited Partnership Four | Impaired | Entitled to Vote |
| Class 6 | Co-Owners | Unimpaired | Deemed to Accept; Not Entitled to Vote on the Plan |
| Class 7 | Interests | Unimpaired | Deemed to Accept; Not Entitled to Vote on the Plan |

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim may have in or against the Debtor, the Estate or its property.  This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtor, the Estate or property of the Debtor or the Estate.  All Distributions under the Plan will be tendered to the Person holding the Allowed Claim. **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

**A.     Allowance of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article and the Bankruptcy Code will be forever barred from asserting those Administrative Expense Claims.

a.     **Allowed Administrative Expense Claims Other than Professional Fee Claims**

An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if: on or before the Administrative Expense Claim Bar Date, the Person holding the Claim both filed with the Bankruptcy Court a motion or application requesting that the Debtor pay the Claim and served the motion or application on the Debtor and the U.S. Trustee. Persons seeking allowance of an Administrative Expense Claim under this paragraph shall be required to file a notice that the deadline to object to such allowance shall be the Administrative Expense Claims Objection Deadline.  Provided, however, that the Debtor may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtor' business to be treated as an

11

Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.

Any objection to an Administrative Expense Claim must be filed by the Administrative Expense Claims Objection Deadline. In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

b.    **Allowed Professional Fee Claims**

Final Fee Applications must be filed no later than twenty-one (21) days after the Effective Date. Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules. Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Debtor, and the Office of the U.S. Trustee.  Failure to properly object to a Final Fee Application constitutes a waiver of a party's right to object to a Final Fee Application.

c.    **Allowed Priority Tax Claims**

The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline.

In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim.  In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

d.    **Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

i.      **Administrative Expense Claims**

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, on the later to occur

12

of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Expense Administrative Claim; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto by the Debtor.  Holders of Administrative Claims will be paid in full on account of their Claims and are not entitled to vote on this Plan.

ii.      **Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.

e.      **Classified Claims**

i.      **Classification and Treatment of Non Tax Priority Claims (Class 1)**

**Classification:**      Class 1 consists of all Non-Tax Priority Claims.

**Treatment:**      Provided that a Non-Tax Priority Claim has not been paid prior to the Effective Date, and except to the extent that a holder of a Non-Tax Priority Claim agrees to a different treatment, each holder of an Allowed Non-Tax Priority Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Non-Tax Priority Claim, on the Effective Date, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim.  Class 1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan.

The Debtor does not believe there are any holders of Non-Tax Priority Claims.

13

ii. **Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders (Class 2)**

**Classification:** Class 2 consists of the Secured Claims of Taxing Authorities and Utility Lienholders

**Treatment:** Except to the extent that a holder of an Allowed Class 2 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 2 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class Claim, on the Effective Date, payment in full, with post-petition interest at the Federal Judgment Rate in effect on the Petition Date.

Holders of Class 2 Claims will retain their liens until the Property is sold.

Holders of Class 2 Claims are impaired and are not entitled to vote to accept or reject this Plan.

iii. **Classification and Treatment of Secured Claim of Welch Family Limited Partnership Nine (Class 3)**

**Classification:** Class 3 consists of the Secured Claim of Welch Family Limited Partnership Nine

**Treatment:** Except to the extent that a holder of an Allowed Class 3 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 3 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class 3 Claim, on the Effective Date, payment in full of the undisputed portion of its Allowed Class 3 Claim, with post-petition interest at the default rate. The Debtor will escrow, from the Sales Proceeds, 200% of the disputed amount of all Class 3 Claims, with their counsel, which counsel for the Debtor will hold in escrow until the Bankruptcy Court resolves such dispute and orders disbursement of the escrowed funds. In the event the Bankruptcy Court orders payment of the disputed portion of the Class 3 Claims, the Debtor will pay half of the amount ordered, and the Brown Trustee will pay half of the amount ordered.

Holders of Class 3 Claims will retain their liens until the Property is sold, and will retain their liens on the fund escrowed above until all disputes with respect to such Class 3 Claims are resolved by Final Order.

14

Holders of Class 3 Claims are provisionally treated as impaired, and are entitled to vote to accept or reject this Plan, subject to Debtor's right to argue they are unimpaired, and not entitled to vote.

**iv.**       **Classification of General Unsecured Claims (Class 4)**

**Classification:**       Class 4 consists of holders of General Unsecured Claims

**Treatment:**       Except to the extent that a holder of an Allowed Class 4 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 4 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class Claim, on the Effective Date, 75% of the amount of their claims. Upon the conclusion of all appeals in this Bankruptcy Case, any related adversary proceeding, and the Adverse Possession Case, holders of Allowed General Unsecured Claims will be paid the remaining 25% of their claims, plus post-petition interest, at the federal judgment rate in effect on the Petition Date.

Holders of Class 4 Claims are impaired and are entitled to vote to accept or reject this Plan.

**v.**       **Classification of Adverse Possession/ Prescriptive Easement Claim of Welch Family Limited Partnership Four (Class 5)**

**Classification:**       Class 5 consists of the Adverse Possession/ Prescriptive Easement Claim of Welch Family Limited Partnership Four.

**Treatment:**       The Debtor will request that the Confirmation Order will authorize it to sell the Property free and clear of all other interests pursuant to 11 U.S.C. § 363(h), and free and clear of liens and interests pursuant to 11 U.S.C. § 363(f), including all claims asserted by Welch Four in the Adverse Possession Case.

If the Court does not authorize the Debtor to sell the Property free and clear of the claims asserted by Welch Four in the Adverse Possession Case, the Debtor will continue the adjudication of the Adverse Possession Case, and file a motion to sell free and clear of liens and interests upon the conclusion of the Adverse Possession Case.

In the event the Court authorizes the sale of the Property free and clear of the claims asserted by Welch Four in the Adverse Possession Case, the Debtor will pay to Welch Four the monetary value of the claims it asserts in the Adverse Possession Case, in an

amount to be determined by the Court, after notice and a hearing.

All Counterclaims against Welch Four are preserved.

Holders of Class 5 Claims are impaired and are entitled to vote to accept or reject this Plan.

### vi.  Classification of Co-Owner Claims (Class 6)

**Classification:**      Class 6 consists of the Co-Owner Claims of the Brown Trustee.

**Treatment:**      After payment of all Class 2 and 3 Claims, the Debtor will pay half of the remaining proceeds of the sale of the Property to the Brown Trustee.  After payment of all Class 2 and 3 Claims, the Debtor will pay half of the remaining proceeds of the sale of the Property to the Brown Trustee.  To the extent it is determine that the Brown Trustee is entitled to any rent that was paid to AV Car prior to AV Car's bankruptcy, the Brown Trustee will be paid such amount.

Holders of Class 6 Claims are unimpaired and are not entitled to vote to accept or reject this Plan.

### Classification of Interests (Class 7):

Shawntell Parker, the holder of 100% of the equity interests, in the Debtor, shall be entitled to keep all of her equity interests in the Debtor.

Holders of interests are not entitled to vote on the Plan.

## IV.    ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

### A.    Impaired Classes to Vote

Each Holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to accept or reject the Plan.

### B.    Acceptance by Class of Creditors

An impaired Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. A Class of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Voting Deadline.

### C.      Elimination of Classes

Any Class that does not contain any Allowed Claims or Interests, or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

### D.      Cramdown

In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan in accordance with section 1129(a) of the Bankruptcy Code.

## V.      PLAN IMPLEMENTATION

### A.      Revesting of Property

All property of the Estate shall revest in the Debtor on the Effective Date, free and clear of all other liens, claims, interests and encumbrances, except for the liens retained pursuant to this Plan.

### B.      Plan Objectives

The Debtor, through the Plan, proposes a sale of the Property free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) and (h) of the Bankruptcy Code and on an "as is, where is" basis, without representations or warranties of any kind, nature or description. The Confirmation Order will approve the sale of the Property via an auction. Counsel for the Debtor will collect the Sales Proceeds and as a fiduciary, although the scope of such fiduciary duties shall be limited exclusively to distributing the funds to the claim or equity holders in accordance with the Plan. The approval of Counsel for the Debtor as a disbursing agent which will be approved by the Court in the Confirmation Order.

### C.      Sale of Property

The sale of the Property will be implemented as follows:

First, the Debtor will request that the Confirmation Order authorize it to sell the Property free and clear of the interest of Mr. Brown and the Brown Trustee pursuant to 11 U.S.C. § 363(h), and free and clear of claims, liens and interests

17

pursuant to 11 U.S.C. § 363(f), including all claims asserted by Welch Four in the Adverse Possession Case.

If the Court does not authorize the Debtor to sell the Property free and clear of all other interests pursuant to 11 U.S.C. § 363(h), the Debtor will continue the adjudication of the 363(h) Case until it is completed.

If the Court does not authorize, in the Confirmation Order, the Debtor to sell the Property free and clear of the claims asserted by Welch Four in the Adverse Possession Case, the Debtor will continue the adjudication of the Adverse Possession Case to completion

In the event the Court authorizes the sale of the Property free and clear of the claims asserted by Welch Four in the Adverse Possession Case in the Confirmation Order, the Debtor will pay to Welch Four the monetary value of the claims its asserts in the Adverse Possession Case, in an amount to be determined by the Court, after notice and a hearing.  In such event, counsel for the Debtor will hold all Sales Proceeds in escrow until the Adverse Possession Case is concluded, and the Bankruptcy Court determines the money value of the claims in the Adverse Possession Case.

The Confirmation Order will provide for the sale of the Property via auction (the "Auction").  The Auction will occur within thirty days of the later of the dates that (1) the Bankruptcy Court has entered an order authorizing the sale of the Property free and clear of liens, which is not stayed; (2) the Bankruptcy Court has entered an order authorizing the Debtor to sell both the Debtor's and the Brown Trustee's interest in the Property pursuant to 11 U.S.C. § 363(h); (3) the Bankruptcy Court has (i)  entered an order authorizing the sale of the Property free and clear of the Adverse Possession Case, which is not stayed;  or (ii) the Superior Court for the District of Columbia has entered final judgment as to all parties in the Adverse Possession Case, which is not stayed;  and (4) the Debtor has filed a notice of auction (the "Auction Notice"), which is served on all creditors and potential purchasers.   The Auction Notice will be served within five business days of the satisfaction of the first three provisions of this paragraph.

The Auction Notice will provide that that any party wishing to bid on the Property must make an Offer, as described below, within 14 days of the Auction Notice (the "Offer Deadline").  The Auction will be held within 14 days of the Offer Deadline, upon five business days' notice to all creditors and parties who made an Offer.  The Auction shall proceed in $10,000 bid increments.

All Parties interested in making an Offer, must deliver the following to the Debtor by the Offer Deadline: (i) written evidence of a commitment for financing or other evidence demonstrating that the  party has the financial ability to purchase the Property; (ii) a cash deposit equal to 1% of the proposed purchase price (the "**Deposit**"); and (iii) an executed Purchase Agreement, substantially in the form

18

attached to the Disclosure Statement as **Exhibit C**, pursuant to which the party would acquire the Property and that (a) has a proposed purchase price of $2.31 million or higher;1 (b) commits to closing within five (5) business days after the Sale Order becomes effective if it is the selected offer, and thirty (30) business days if it selected as a backup bidder ; (c) is irrevocable until thirty (30) business days after the entry of the Sale Order; (d) does not provide for any break-up fee, termination fee, expense reimbursement or similar payment; and (e) provides that the party will forfeit its Deposit as liquidated damages if it repudiates or defaults under the Purchase Agreement.  All offers which meet these requirements shall be deemed Qualified Offers.  The Offer of Taja Investments, LLC will be deemed a Qualified Offer in the Confirmation Order.

Within seven days of the Auction (the "Offer Selection Date"), the Debtor will select the highest and best Qualified Offer for the Property. No later than seven (7) business days after the Offer Selection Date, the Debtor will file a motion to approve the sale to the bidder whose Offer has been selected.  On the Offer Selection Date, the Debtor may select one or more back-up Offers and may seek approval to consummate the Sale to the parties making such back-up Qualified Offers if the party with the highest and best Qualified Offer is unable to consummate the Sale for any reason.  The Debtor reserves the right to select any Offer from any party, regardless of whether or not they participate in the Auction, so long as they make an offer sufficient to pay all claims in the Debtor's case in full.

All approved winning bidders shall be required to close on the sale of the Property within five business days of the entry of the order approving the sale (the "Sale Order").  All approved backup bidders shall be required to close on the sale of the Property within thirty business days of the entry of the Sale Order, upon notice that the sale to the winning bidder did not close.

**D.    Retention of Professionals**

On the Effective Date, the Debtor shall be allowed, without further order of the Bankruptcy Court, to employ and compensate professionals, including, but not limited to, counsel, expert witnesses, accountants, appraisers, consultants, and financial advisors, as needed to assist it in fulfilling its obligations under the Plan, and on whatever fee arrangement it deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements. Professionals engaged by the Debtor after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein.  If the Debtor has any objection to an application for compensation submitted to it by a Professional, the Debtor and the Professional which has submitted the application may file a motion with the Bankruptcy Court to decide the matter.

19

**E. Distributions**

    **a. Distribution of Property Under the Plan**

        **i. Source of Distributions**

The sources of all Distributions and payments under this Plan are the sale of the Property.

        **ii. Manner of Cash Payments**

Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Debtor or, at the Debtor's option, by wire transfer from a domestic bank. Cash payments to foreign entities holding Allowed Claims may be paid, at the Debtor's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

        **iii. Setoff and Recoupment**

Notwithstanding anything to the contrary in this Plan, the Debtor may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that the Debtor or the Estate may have against the claimant or the Person holding the Allowed Claim. The Debtor does not and shall not be deemed to waive or release any claim against those Persons by failing to effect such a setoff or recoupment, by the allowance of any claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim. In addition, the settlement or adjudication of any Avoidance Action shall not bar the Debtor from filing a subsequent objection to Claim. The Debtor may assert all of the same rights and defenses, including all setoff rights and rights under Section 502(d) of the Bankruptcy Code, with respect to any Claim held by an Assignee of a Claim as it could against the original Holder of the Claim.

        **iv. Interest on Claims**

Unless otherwise specifically provided for in this Plan, the Confirmation Order, any order of this Court, or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid on any Claims, and no

Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

### v.  Withholding and Reporting Requirements

In connection with this Plan and all Distributions under this Plan, the Debtor shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements.   The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements.  All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All Holders shall be required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers.  Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  The Debtor may require any Creditor to provide a completed form W-8 or W-9 IRS tax form or otherwise furnish to the Debtor its tax identification number as assigned by the IRS and the Debtor may condition any distribution to any Creditor upon receipt of such tax identification number.

### vi.  No *De Minimus* Distributions

Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $10.00 will be made by the Debtor to any Person holding an Allowed Claim. No consideration will be provided in lieu of the *de minimus* Distributions that are not made under this Article.

### vii.  Fractional Dollars

Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### viii.  No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, **provided, however**, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Debtor does not dispute, which Distribution shall be made by the Debtor at the same time and in the same manner that such Debtor makes Distributions to Holders of similar Allowed Claims pursuant to the provisions of the Plan. The Debtor may, in its discretion, withhold Distributions otherwise due and payable by the Debtor hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed. A Claim of any Person from which property may be recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan. Counsel for the Debtor shall 200% of the amounts of all Disputed Claims in escrow until such Disputed Claim is resolved, except if the Bankruptcy Court authorizes the sale of the Property free and clear of the claims asserted by Welch Four in the Adverse Possession Case before the Adverse Possession Case is resolved, counsel for the Debtor will hold Sales Proceeds in escrow until the Adverse Possession Case is resolved by Final Order.

### ix.  Undeliverable or Unclaimed Distributions

Subject to subparagraphs i-viii above, Distributions to Persons holding Allowed Claims will initially be made by mail as follows:

   **1.** Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Debtor; or

   **2.** If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

If no address is available either on a proof of claim or on the Bankruptcy Schedules, the Distribution will be deemed to be undeliverable. If a Distribution is returned to the Debtor as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Debtor will make no

further Distribution to the Person holding the Claim on which the
Distribution is being made unless and until the Debtor is timely notified in
writing of that Person's current address.  Subject to the following
paragraph, until they become deliverable, the Debtor may, in its discretion,
create a Plan Reserve for undeliverable Distributions for the benefit of the
Persons entitled to the Distributions.  These Persons will not be entitled to
any interest on account of the undeliverable Distributions.

Any Person that is otherwise entitled to an undeliverable Distribution and
that does not, within the later of six months after the Effective Date, or
sixty (60) days after a Distribution is returned to the Debtor as
undeliverable, or is deemed to be an undeliverable Distribution, provide
the Debtor with a written notice asserting its claim to or interest in that
undeliverable Distribution and setting forth a current, deliverable address
will be deemed to waive any claim to or interest in that undeliverable
Distribution and will be forever barred from receiving that undeliverable
Distribution or asserting any Claim related thereto against the Debtor and
the Estate.  Nothing in the Plan requires the Debtor to attempt to locate
any Person holding an Allowed Claim and whose Distribution is
undeliverable.

**F.    Operation of Businesses**

Upon confirmation of this Plan, as may be modified from time to time, the Debtor
shall be free to, in a manner not inconsistent with this Plan or any Order issued by
the United States Bankruptcy Court, (1) pay Post-Effective Date Expenses
without restriction, (2) operate its business without restriction.

## VI.    LITIGATION

**A.  Preservation of Causes of Action and Defenses**

Except as otherwise expressly provided in this Plan, on the Effective Date, all property of
the Estate, including, but not limited to, all claims, rights, defenses, Causes of Action of
the Debtor, shall vest in the Debtor, free and clear of all liens, Claims, charges or other
encumbrances.

Unless expressly waived, released or settled in the Plan or any Final Order, the Debtor
shall retain, and may exclusively enforce, any and all claims, rights, defenses and Causes
of Action (including without limitation, claims, rights, defenses and Causes of Action not
specifically identified, or which the Debtor may presently be unaware of, or which may
arise or exist by reason of additional facts or circumstances unknown to the Debtor, at
this time, or facts or circumstances which may change or be different from those which
the Debtor believes to exist), including the Counterclaims, whether arising before or after
the Petition Date, in any court or tribunal, including but not limited to the Bankruptcy
Court, and specifically including but not limited to claims against Welch Four and Welch

Nine.  The Debtor, is authorized to exercise and perform the rights, powers and duties held by the Debtor's Estate, including without limitation the authority under Bankruptcy Code section 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims, rights, defenses and Causes of Action. The Debtor shall further have the power, and may exercise discretion, to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, defenses and Causes of Action, and shall not be required to seek Bankruptcy Court approval of such decisions.

## B.  Preclusion Doctrines

No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, rights, defenses or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims, rights, defenses or Causes of Action have been specifically released in the Plan or other Final Order.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall prevent the Debtor from objecting to any Claim, except where such Claim is specifically allowed in the Plan or other Final Order.

No one may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim, right, defense or Cause of Action against them as an indication that the Debtor will not pursue any and all available claims, rights, defenses, or Causes of Action against them.  The Confirmation Order shall not bar the Debtor by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, settling, or defending any claim, right, defense, or Cause(s) of Action.

**THE DEBTOR WILL MAKE THE DECISION TO PURSUE, NOT PURSUE OR SETTLE VARIOUS CAUSES OF ACTION IN ITS DISCRETION WITH THE ADVICE OF COUNSEL.  THIS DECISION MAY BE BASED ON MANY FACTORS, INCLUDING BUT NOTLIMITED TO THE MERITS OF THE VARIOUS CAUSES OF ACTION AND THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION.   AS SET FORTH IN ARTICLE VII OF THE PLAN, THE DEBTOR AND ITS PROFESSIONALS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE DEBTOR'S GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OR SETTLEMENT OF ANY CAUSE OF ACTION.**

## VII.    EXCULPATION

### A.      Limitation of Liability in Connection with the Case, the Plan, Disclosure Statement and Related Documents

Pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and its professionals, representatives, successors, and assigns (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); *provided*, *however*, that no Person shall be relieved of liability for fraud, gross negligence, intentional misconduct or the willful violation of federal or state securities laws or the Internal Revenue Code.

The Plan provides that all Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct. Any Plan Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

### B.    Injunction Against Suing the Debtor, the Estate, and Estate Parties

**Unless otherwise provided herein or the Confirmation Order, all injunctions or stays provided for in the Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.**

**As of the Effective Date, all Persons that have held, hold, or may hold Claims (including, but not limited to, Administrative Expense Claims) are enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim, Administrative Expense Claim against the Debtor, and its professionals, representatives, successors and assigns (the "Estate Parties"), including, but not limited to, any Claims, Administrative Expense Claims based upon any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Estate Parties arising from any matter related to the Case; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claims (including, but not limited to, Administrative Expense Claims); and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claim (including, but not limited to, Administrative Expense Claims), except that holders of Administrative Expense Claims**

**may file requests for allow of Administrative Expense Claims by the Administrative
Expense Claims Bar Date.**

**Upon the completion of all plan payments to Creditors pursuant to this Plan, by Court
Order, all of the remaining claims asserted against the Debtor by creditors in each class
included the Plan, shall be, to the fullest extent permitted by §1141 of the Bankruptcy
Code, satisfied, settled, released and discharged as against the Debtor, for any debt that
arose before the Confirmation Date and any debt of a kind specified in §§502 and 503 of
the Bankruptcy Code and all claims of any nature, whether or not (i) a proof of claim based
on such debt or obligation is filed or deemed filed under §501 of the Bankruptcy Code, (ii)
such Claim is allowed under §502 of the Bankruptcy Code, or (iii) the holder of such Claim
has accepted the Plan.  Accordingly, upon the entry of the Discharge, all persons or entities
which could have been claimants, and all actual claimants listed herein, shall be precluded
from asserting any Claim against Debtor, based upon any act or omission, transaction or
other activity of any kind or nature that occurred prior to the Effective Date, and the
Confirmation Order shall permanently enjoin all such person or entities, and their
successors and assigns, from enforcing or seeking to enforce any such Claim against the
Debtor.**

For the avoidance of doubt, and notwithstanding any other provision contained in the
Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release or
enjoin the prosecution of any claims or Causes of Action by the Debtor or the Estate.

## VIII.   OTHER PLAN PROVISIONS

### A.  Conditions to Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date, each
of which must be satisfied or waived in writing in accordance with Article VIII.C:

> a.  An order finding that the Disclosure Statement contains adequate information
> pursuant to Bankruptcy Code section 1125 shall have been entered by the
> Bankruptcy Court; and

> b.  A Confirmation Order in form and substance, reasonably acceptable to the
> Debtor shall have been entered by the Bankruptcy Court.

### B.  The Effective Date

This Plan will not be consummated or become binding unless and until the Effective Date
Occurs.  The Effective Date will be the first Business Day after the following conditions have
been satisfied:

> a.  Fourteen (14) days have passed since the Confirmation Date;
> b.  The Confirmation Order is not stayed;

    **c.**  The Bankruptcy Court has entered an order authorizing the sale of the Property free and clear of liens, which is not stayed;

    **d.**  The Bankruptcy Court has (i)  entered an order authorizing the sale of the Property free and clear of the Adverse Possession Case, which is not stayed; or (ii) the Superior Court for the District of Columbia has entered final judgment as to all parties in the Adverse Possession Case, which is not stayed;

    **e.**  The Debtor has consummated the sale of the Property pursuant to the Auction.

Upon entry of the Confirmation Order, the Debtor is authorized to proceed towards consummating the sale of the Property pursuant to the auction described in the Plan.

### C.  Waiver of Conditions

Each of the conditions set forth in Articles VIII.A and VIII.B of this Plan, except for entry of the Confirmation Order, as set forth in Article VIII.A of this Plan, may be waived in whole or in part by the Debtor.  For the avoidance of doubt, absent a stay pending appeal, the pendency of any appeal of the Confirmation Order shall not cause the delay of the Effective Date.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor as a basis to not consummate this Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### D.  Consequences of Non-Occurrence of Effective Date

In the event that the Effective Date does not timely occur, the Debtor reserves all rights to seek orders from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement of Claims provided for in this Plan be null and void.

### E.  Executory Contracts and Unexpired Leases

#### a.  Assumption/ Rejection of Executory Contracts and Unexpired Leases

The Debtor's lease with eTech will be assumed.  Except as otherwise provided in the Confirmation Order, this Plan, or any other Plan Document, on the Effective Date, the Debtor will be deemed to have rejected any Lease and any and all other agreements that the Debtor executed before the Effective Date to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365.  On the Effective Date, the Confirmation Order will constitute a Court order approving this rejection.

#### b.  Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from the rejection under the Plan of an executory contract or an unexpired lease must be filed with the Court and served on the Debtor and its counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are

not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims.  The Debtor reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

### F.  Indemnification Obligations

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory.  Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

### G.  Entry of a Final Decree

Promptly following the completion of all Distributions contemplated by this Plan, the Debtor will file a motion with the Bankruptcy Court to obtain the entry of a final decree.

### United States Trustee Fees and Reports

Pursuant to section 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the Office of the United States Trustee under 28 U.S.C. §1930(a)(6) shall be paid on the Effective Date. After the Confirmation Date, the Debtor shall file post-confirmation quarterly disbursement reports and pay all quarterly fees to the Office of the United States Trustee which are required by applicable law until the case is closed.

### H.  Post-Effective Date Effect of Evidences of Claims

Commencing on the Effective Date, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

### I.  No Recourse

No Person entitled to receive a payment or Distribution under the Plan will have any recourse on account of a claim against the Estate, the Debtor and its professionals, representatives, successors, and assigns, or their respective property and assets, by reason of its claim, other than the right to receive Distributions in accordance with the terms of the Plan.

### J.  No Admissions

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked, or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan or the Disclosure Statement, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any Causes of Action held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor, the Estate, or any creditors or equity security holders in any further proceedings.

### K.  Severability of Plan Provisions

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

### L.  Transfer Tax Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, it is intended that the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale of Property, and any deed of trust evidencing any loan obtained to purchase the Property, shall not be subject to any stamp tax or other similar tax.

### M.  Governing Law

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, District of Columbia law without giving effect to District of Columbia law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan terms.

### N.  Retention of Jurisdiction

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the

Case, this Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

    **a.** Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

    **b.** Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Debtor may be made in the ordinary course of business without the approval of the Bankruptcy Court;

    **c.** Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor are parties or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

    **d.** Effectuate performance of and payments under the provisions of this Plan;

    **e.** Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

    **f.** Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

    **g.** Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

    **h.** Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

    **i.** Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

30

**j.** Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

**k.** Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or any Plan Document;

**l.** Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

**m.** Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

**n.** Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

**o.** Hear and determine motions for Bankruptcy Rule 2004 examinations;

**p.** Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

**q.** Hear and determine any Causes of Action, including the Counterclaims;

**r.** Hear and determine the 363(h) Case;

**s.** Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

**t.** Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

**u.** Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

**v.** Enforce all orders previously entered by the Bankruptcy Court;

**w.** Dismiss the Case; and

**x.** Enter a final decree closing the Case.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

### O.  Successors and Assigns

The rights, benefits, and obligations of any Person referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

### P.  Saturday, Sunday, or Legal Holiday

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### Q.  Plan Modification

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Debtor reserves the right to alter, amend, or modify the Plan before it is substantially consummated.

### R.  Withdrawal of the Plan

The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

## IX.    RECOMMENDATIONS AND CONCLUSION

The Debtor, as the proponent of the Plan, strongly recommends that all creditors receiving a Ballot vote in favor of the Plan.  The Debtor believes that the Plan maximizes recoveries to all Creditors entitled to receive distributions on their Allowed Claims and, thus, is in its best interests.  The Plan as structured, among other things, allows creditors to be paid in full, and minimizes delays in recoveries to all Creditors entitled to receive distributions on their Allowed Claims.

Dated:  February 21, 2019                Respectfully Submitted,

                                         /s/ Shawntell Parker
                                         A V Car & Home, LLC
                                         Managing Member

                                         Respectfully submitted,

                                         /s/ Justin P. Fasano
                                         Janet M. Nesse (Bar No. 358514)
                                         Justin P. Fasano (Bar No. MD21201)
                                         McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.
                                         6411 Ivy Lane, Suite 200
                                         Greenbelt, MD 20770
                                         (301) 441-2420
                                         jnesse@mhlawyers.com
                                         jfasano@mhlawyers.com
                                         Counsel for A V Car & Home, LLC